Marc P Friedman
OSB# 89244
Law Office of Marc P Friedman, P.C.
245 West 13th Avenue
PO Box 11167
Eugene, Oregon 97440
541-686-4890
541-344-6254 (Fax)
mpfriedma@yahoo.com

SEALED
REDACTED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,      )   Case No: 06-60070-1 AA
                                )
        v.                      )   PETITION TO ENTER PLEA OF GUILTY,
                                )   CERTIFICATE OF COUNSEL AND
                                )   ORDER ENTERING PLEA
KEVIN TUBBS,                     )
                                )
                Defendant.      )
                                )
————————————————————————————————)

The Defendant represents to the court:

1.      My name is Kevin Tubbs.  I am 37 years old.  I attended school up to and

including graduation from college.

2.      My attorney is Marc P. Friedman.

3.      My attorney and I have discussed my case fully.  I received a copy of the

Information, or it has been read to me, and I discussed it with my attorney.  My attorney

has counseled and advised me concerning the nature of each charge, any lesser-included

offense(s), and the possible defenses that I might have in this case.  I have been advised

and understand that the elements of the charges alleged against me to which I am

pleading "GUILTY" are as follows:

Count 1: Conspiracy to Commit Arson and Conspiracy to Destroy an Energy Facility in violation of Title 18, United States Code, Section 371.

Count 2: Arson – Oakridge Ranger Station, in violation of Title 18, United States Code, Section 844(f) and (2).

Count 3: Arson – Cavel West, in violation of Title 18, United States Code, Section 844 (i) and (2).

Count 4: Arson – BLM Wild Horse Facility, Burns, Oregon, in violation of Title 18, United States Code, Section Section 844(f), (i) and (2).

Count 5: Attempted Arson – U.S. Forest Industries, in violation of Title 18, United States Code, Section 844(i) and (2).

Count 6: Arson – Childers Meat Company, in violation of Title 18, United States Code, Section 844(i) and (2).

Count 7: Arson – EPD Public Safety Station, in violation of Title 18, United States Code, Section 844(i) and (2).

Count 8: Arson – Superior Lumber Company, in violation of Title 18, United States Code, Section 844(i) and (2).

Counts 9 through 43 – Romania Chevrolet Truck Center Vehicles, in violation of Title 18, United States Code, Section 844(i) and (2).

Counts 44 through 56: Arson and Attempted Arson – Jefferson Poplar Farm, in violation of Title 18, United States Code, Section 844(i) and (2).

Count 1.     In the District of Oregon, between October, 1996 and October, 2001, I conspired with two or more persons to commit offenses against the United States as more specifically set forth as to Count 1 in the document entitled Attachment 1, which is attached here to and made a part hereof.

Counts 2-56.  In the District of Oregon, I and other individuals unlawfully and willfully caused, or aided and abetted the malicious damaging and destroying by means of fire and an explosive the destruction of buildings and other real and personal property owned and possessed by the United States, buildings and other real and personal property used in interstate commerce and

1 used in activities affecting interstate commerce, and vehicles used in interstate commerce and

2 used in activities affecting interstate commerce as follows:

3 Count 2: Oakridge Ranger Station, Oakridge, Lane County, Oregon, October 30, 1996,

4 property of the United States Forest Service, property owned and possessed by the United States

5

6 Count 3: Cavel West, Redmond, Deschutes County, Oregon, July 21, 1997, property of Cavel West Inc, property used in interstate commerce and affecting interstate commerce.

7 Count 4: Arson – BLM Wild Horse Facility, Burns, Harney County, Oregon, November 30,

8 1997, property of Bureau of Land Management of the Department of the Interior, property owned and possessed by the United States.

9

10 Count 5: Attempted Arson – U.S. Forest Industries, Medford, Jackson County, Oregon December 22, 1998, property of U.S. Forest Industries, property used in interstate commerce

11 and affecting interstate commerce.

12 Count 6: Arson – Childers Meat Company, Eugene, Lane County, Oregon, May 9, 1999,

13 property of Childers Meat Company, property used in interstate commerce and affecting interstate commerce.

14

15 Count 7: Arson – EPD Public Safety Station, Eugene, Lane County, Oregon, September 6, 2000, property of Eugene Police Department - West University Public Safety Station,

16 property used in interstate commerce and affecting interstate commerce.

17 Count 8: Arson – Superior Lumber Company, Glendale, Douglas County, Oregon, January 2,

18 2001, Superior Lumber Company, property used in interstate commerce and affecting interstate commerce.

19

20 Counts 9 through 43 – Romania Chevrolet Truck Center Vehicles, Eugene, Lane County, Oregon, March 30, 2001, vehicles used in interstate commerce and affecting interstate

21 commerce located at Romania Chevrolet Truck Center.

22 Counts 44 through 56: Arson and Attempted Arson – Jefferson Poplar Farm, Clatskanie, Columbia County, May 21, 2001, property of the Jefferson Poplar Farm, property used in

23 interstate commerce.

24 As more specifically set forth as to Counts 2-56 in the document entitled

25 Attachment 1, which is attached here to and made a part hereof.

26

27

28

1     I have had a full and adequate opportunity to disclose to my attorney all facts known to

2     me that relate to my case. I understand that the Court may ask whether I am satisfied with

3     the advice I have received from my attorney.

4     4.    I know that if I plead "GUILTY," I will have to answer any questions that the judge asks

5

6     me about the offenses to which I am pleading guilty. I also know that if I answer falsely,

7     under oath, and in the presence of my attorney, my answers could be used against me in a

8     prosecution for perjury or false statement.

9     5.    I am not under the influence of alcohol or drugs. I am not suffering from any injury,

10     illness or disability affecting my thinking or my ability to reason except a follows: I have

11

12     not taken any drugs or medications within the past seven (7) days, except as follows:

13          None.

14     6.    I understand that conviction of a crime can result in consequences in addition to

15     imprisonment. Such consequences include deportation, or removal from the United

16

17     States, or denial of naturalization, if I am not a United States citizen; loss of eligibility to

18     receive federal benefits; loss of certain civil rights, (which may be temporary or

19     permanent depending on applicable state or federal law), such as the right to vote, to hold

20     public office, and to possess a firearm; and loss of the privilege to engage in certain

21     occupations licensed by the state or federal government.

22     7.    I know that I may plead "NOT GUILTY" to any crime charged against me and that I may

23

24     persist in that plea if it has already been made. I know that if I plead "NOT GUILTY" the

25     Constitution guarantees me:

26     a.    The right to a speedy and public trial by jury, during which I will be presumed to be

27          innocent unless and until I am proven guilty by the government beyond a reasonable

28

doubt and by the unanimous vote of twelve jurors;

    b.   The right to have the assistance of an attorney at all stages of the proceedings;

    c.   The right to use the power and process of the court to compel the production of evidence, including the attendance of witnesses in my favor;

    d.   The right to see, hear, confront and cross-examine all witnesses called to testify against me;

    e.   The right to decide for myself whether to take the witness stand and testify, and if I decide not to take the witness stand, I understand that no inference of guilty may be drawn from his decision; and

    f.   The right not to be compelled to incriminate myself.

8.    I know that if I plead "GUILTY" there will be no trial before either a judge or a jury and that I will not be able to appeal from the judge's denial of any pretrial motions I may have filed concerning matters or issues not related to the court's jurisdiction.

9.    In this case I am pleading "GUILTY" under Rule 11(c)(1)(B) pursuant to a plea agreement. My attorney has explained the effect of my plea under Rule 11 to be as follows:

        I plead guilty under Rule 11(c)(1)(B); therefore, although the judge will consider the recommendations and agreements of both the prosecution and the defense attorneys concerning sentencing, the judge is not obligated to follow those recommendations or agreements. If the judge imposes a sentence different from what I expected to receive under the terms of my plea agreement with the prosecutor, I do not have a right to withdraw my plea.

10. I know the maximum sentence which can be imposed upon me for the crime of Conspiracy (Count 1) to which I am pleading "GUILTY" is the maximum sentence is five (5) years imprisonment, and a fine of $250,000, and to the crime of Arson (Counts 2-56) to which I am pleading "GUILTY" is there is a maximum sentence of 20 years imprisonment, a mandatory minimum of 5 years, and a fine of $250,000.

11. I know that the judge, in addition to any other penalty, will order a special assessment as provided by law in the amount of $100.00 per count of conviction.

12. I know that if I am ordered to pay a fine, and I willfully refuse to pay that fine, I can be returned to court, where the amount of the unpaid balance owed on the fine can be substantially increased by the judge and I can be imprisoned for up to one year.

13. My attorney has discussed with me the Federal Sentencing Guidelines. I know that the Federal Sentencing Guidelines are advisory, not mandatory. I also know that the sentencing judge, in determining the particular sentence to be imposed, must consider those factors set forth in Title 18, United States Code, Section 3553(a), including but not limited to: the nature and circumstances of the offense, my own history and characteristics, the goals of sentencing (punishment, deterrence, protection and rehabilitation), and the sentencing range established by the advisory Guidelines. If my attorney or any other person has calculated a guideline range for me, I know that this is advisory and is but one of the factors that the judge will consider in making a final decision as to what sentence will be imposed. I also know that a judge may not impose a sentence greater than the maximum sentence referred to in paragraph 10 above.

14 I know from discussion with my attorney that, under the Federal Sentencing Guidelines, if I am sentenced to prison, I am not entitled to parole. I will have to serve the full

1  sentence imposed except for any credit for good behavior that I earn. I can earn credit for

2  good behavior in prison at a rate of up to 54 days for each year of imprisonment served.

3  Credit for good behavior does not apply to sentence of one year or less.

4  15.  I know that if I am sentenced to prison, the judge will impose a term of supervised release

5  to follow the prison sentence. During my supervised release term I will be supervised by

6  a probation officer according to terms and conditions set by the judge. In my case, a term

7  of supervised release on Counts 1-56 can be 2-3 years.

8

9  16.  I know that in addition to or in lieu of any other penalty, the judge can order restitution

10  payments to any victim of any offense to which I plead guilty. I am also informed that,

11  for certain crimes of violence and crimes involving fraud or deceit, it is mandatory that

12  the judge impose restitution in the full amount of any financial loss or harm caused by an

13  offense. If imposed, the victim can use the order of restitution to obtain a civil judgment

14  lien. A restitution order can be enforced by the United States for up to twenty (20) years

15  from the date of my release from imprisonment, or, if I am not imprisoned, twenty (20)

16  years from the date of the entry of judgment. If I willfully refuse to pay restitution as

17  ordered, a judge may re-sentence me to any sentence which could originally have been

18  imposed.

21  17.  On any fine or restitution in an amount of $2,500 or more, I know that I will be required

22  to pay interest unless that fine or restitution is paid within fifteen (15) days from the date

23  of the entry of judgment.

24

25  18.  If I am on probation, parole, or supervised release in any other state or federal case, I

26  know that by pleading "GUILTY" in this court my probation, parole or supervised release

27  may be revoked and I may be required to serve time in that case, which may be

28

consecutive, that is, in addition to any sentence imposed on my in this court.

19. If I have another case pending in any state or federal court, I know that my Petition and Plea Agreement in this case does not, in the absence of an express and written agreement, apply to my other case(s), and that I can be faced with consecutive sentences of imprisonment.

20. My plea of "GUILTY" is not the result of force, threat, or intimidation.

21. I hereby request that the judge accept my plea of 'GUILTY" to the following counts: Counts 1-56.

22. I know that the judge must be satisfied that crimes occurred and that I committed those crimes before my plea of 'GUILTY' can be accepted. With respect to the charges to which I am pleading "GUILTY," I represent that I the acts set forth in Attachment 1 are true and that the government can prove the facts set forth in Attachment 1.

23. I offer my plea of "GUILTY" freely and voluntarily and of my own accord and with a full understanding of the allegations set forth in the Information, and with a full understanding of the statements set forth in this Petition and in the Certificate of my attorney that is attached to this Petition.

SIGNED by my in the presence of my attorney, after reading all of the foregoing pages and paragraphs of this Petition on this __20^th__ day of July, 2006.

_Kevin Tubbs_
( Kevin Tubbs, Defendant

CERTIFICATE OF COUNSEL

The undersigned, as attorney for Defendant, hereby certifies:

1.  I have fully explained to the Defendant the allegations contained in the Indictment/Information in this case, any lesser-included offenses, and the possible defenses which may apply in this case.

2.  I have personally examined the attached Petition to Enter Plea of Guilty and Order Entering Plea, explained all of its provisions to the Defendant and discussed fully with the Defendant all matters described and referred to in the Petition.

3.  I have explained to the Defendant the maximum penalty and other consequences of entering a plea of guilty described in paragraphs (6)-(23) of the Petition, and I have also explained to the Defendant the applicable Federal Sentencing Guidelines.

4.  I recommend that the Court accept the Defendant's plea of "GUILTY," signed by me in the presence of the above-named Defendant and after full discussion with the Defendant of the contents of the Petition to Enter Plea of Guilty, and any Plea Agreement, on this 20th _____ day of July, 2006.

_____
Marc P. Friedman, OSB #89244
Attorney for Defendant

CERTIFICATE OF COUNSEL

1      ORDER ENTERING PLEA

2            I find that the Defendant's plea of 'GUILTY" has been made freely and voluntarily

3      and not out of ignorance, fear, inadvertence or coercion.  I further find the Defendant has

4      admitted facts that prove each of the necessary elements of the crimes to which the Defendant

5      has plead "GUILTY."

6

7            IT IS THEREFORE ORDERED that the Defendant's plea of "GUILTY" be accepted

8      and entered as requested in this Petition and as recommended in the Certificate of Defendant's

9      attorney.

10           DATED this _20_ day of July, 2006.

11

12                                                _____
                                                  Ann Aiken, District Court Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    ORDER ENTERING PLEA

28



**U.S. Department of Justice**
*Karin J. Immergut*
*United States Attorney*
*District of Oregon*
*701 High Street*                                    *Office: (541)465-6771*
*Eugene, OR 97401-2798*                    *Fax: (541) 465-6582*

July 19, 2006

Mr. Marc P. Friedman
Attorney at Law
P.O. Box 11167
Eugene, Oregon 97440

> Re:     <u>United States v. Kevin Tubbs</u>         Case No. CR 06-60070-1-AA
>          Plea Agreement - **REDACTED VERSION**

Dear Counsel:

1.  **Parties/Scope**:  This plea agreement is between this United States Attorney's Office for the District of Oregon (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority except as otherwise identified in this agreement.   This agreement does not apply to any charges other than those specifically mentioned herein.

2.  **Charges and Penalties**:  Defendant agrees to plead guilty to Counts 1 through 56 of the Information as follows:

    **Count 1: Conspiracy to Commit Arson and Conspiracy to Destroy an Energy Facility of the United States,** in violation of Title 18, United States Code, Section 371. The maximum sentence is 5 years imprisonment, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

    **Count 2: Arson – Oakridge Ranger Station**, in violation of Title 18, United States Code, Section 844(i).  The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

    **Count 3: Arson – Cavel West**, in violation of Title 18, United States Code, Section 844(i).  The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

    **Count 4: Arson – BLM Wild Horse Facility, Burns, Oregon**, in violation of Title 18, United States Code, Section 844(i).  The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

**Count 5: Attempted Arson – U.S. Forest Industries**, in violation of Title 18, United States Code, Section 844(i). The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

**Count 6: Arson – Childers Meat Company**, in violation of Title 18, United States Code, Section 844(i). The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

**Count 7: Arson – EPD Public Safety Station**, in violation of Title 18, United States Code, Section 844(i). The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

**Count 8: Arson – Superior Lumber Company**, in violation of Title 18, United States Code, Section 844(i). The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

**Counts 9 through 43 – Romania Chevrolet Truck Center Vehicles**, in violation of Title 18, United States Code, Section 844(i). The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

**Counts 44 through 56: Arson and Attempted Arson – Jefferson Poplar Farm**, in violation of Title 18, United States Code, Section 844(i). The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

Defendant agrees to pay the fee assessment applicable to each of the above counts by the time of entry of guilty plea or explain to the court why this cannot be done. Defendant will pay mandatory restitution as ordered by the court.

3.    **Factual Basis**:   The factual basis for each count is attached hereto and by this reference incorporated herein as Attachment 1, which defendant agrees the USAO can prove beyond a reasonable doubt.

4.    **Dismissal/No Prosecution**:   The USAO will move to dismiss all remaining charges at the time of sentencing.  The USAO further agrees not to bring additional charges against defendant for offenses relating to arson, conspiracy, conspiracy to commit arson, or destruction of an energy facility in which defendant may have been involved directly or indirectly up to and including December 11, 2005, which took place in the District of Oregon.

5.   **Resolution of Sentencing Issues**: In addition to waiving the right to a jury trial on the issue of guilt, defendant knowingly and voluntarily agrees that sentencing issues in this case need not be alleged in a grand jury indictment, proven to a trial jury, or proven beyond a reasonable doubt. Defendant also knowingly and voluntarily consents to judicial fact-finding and resolution of any and all sentencing issues. Defendant and government agree that the guidelines calculations should be derived from the United States Sentencing Commission Guidelines Manual with effective date of November 1, 2000 and further that the combined offense level for defendant requires a 5 level increase pursuant to §3D1.4 of that manual. The defendant and government understand and agree that the court will consider 18 U.S.C. §3553(a) in determining the appropriate sentence in this case.

6.   **Guideline Enhancement**: The USAO will recommend the terrorism guideline enhancement found in U.S.S.G. §3A1.4 because the felony offenses either involved or were intended to promote a federal crime of terrorism.

7.   **Aggravating Role**: The USAO will recommend that defendant receive a 2 level increase for his role as a leader in the offense under the provisions of U.S.S.G. §3B1.1(c).

8.   **Acceptance**: The USAO agrees to recommend a 3 level reduction for acceptance of responsibility if defendant's offense level is 16 or greater; otherwise a 2 level reduction applies pursuant to U.S.S.G. §3E1.1. The USAO reserves the right to change or omit this recommendation if defendant, between plea and sentencing, commits any new or additional violation of law, obstructs or attempts to obstruct justice or acts inconsistently with acceptance of responsibility.

9.   **REDACTED**

10.  **REDACTED**

11.  **USAO Sentence Recommendation**: The sentence to be recommended by the government in this case is based on the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide a just and fair sentence for this defendant in relation to and in comparison with all of the defendant's co-conspirators.

12.  **Waiver of Appeal/Post-Conviction Relief**: Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds unless the sentence imposed exceeds the statutory maximum, the court imposes an upward departure pursuant to Part 5K of the Sentencing Guidelines, or the

court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeds the advisory guideline range. Should defendant seek an appeal, despite this waiver of that right, the USAO may take any position on any issue on appeal. Defendant also waives the right to file a motion pursuant to 28 U.S.C. § 2255 to set aside the conviction and sentence, except on grounds of ineffective assistance of counsel, newly discovered evidence, or a retroactive change in the applicable guidelines or statute.

13. **Court Not Bound**: The court is not bound by the recommendations of the parties or of the Presentence Report (PSR) writer. Because this agreement is made under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind this plea agreement if the court does not follow the agreements or recommendations herein.

14. **Full Disclosure/Reservation of Rights**: The USAO will fully inform the PSR writer and the court of the facts and law related to defendant's case. Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

15. **Breach of Plea Agreement**: If defendant breaches the terms of this agreement, or commits any new violations of law between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea.

16. **REDACTED**

17. **REDACTED**

18. **Total Agreement**: This letter states the full extent of the agreement between the parties. There are no other promises or agreements, express or implied. If defendant accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

Sincerely,

KARIN J. IMMERGUT
United States Attorney


KIRK A. ENGDALL
Assistant U.S. Attorney

I have read this agreement carefully and reviewed every part of it with my attorney. I understand the agreement and voluntarily agree to it. I am satisfied with the legal assistance

provided to me by my attorney.


_____                          _____

Date                                             KEVIN TUBBS
                                                 Defendant


      I represent defendant as legal counsel.  I have carefully reviewed every part of this agreement with defendant.  To my knowledge defendant's decision to enter into this agreement is an informed and voluntary one.


_____                          _____

Date                                             MARC P. FRIEDMAN
                                                 Attorney for Defendant

ATTACHMENT 1

<u>United States vs. Kevin Tubbs</u>

## Count 1: Conspiracy to Commit Arson and Destruction an Energy Facility of the United States:

Beginning in October 1996 and continuing through October, 2001, in the District of Oregon and elsewhere, Josephine Sunshine Overaker, Kevin Tubbs, Stanislas Gregory Meyerhoff, Daniel Gerard McGowan, Joseph Dibee, Rebecca Rubin, Chelsea Dawn Gerlach, Kendall Tankersley, Suzanne Savoie, Jonathan Christopher Mark Paul, Darren Todd Thurston, Nathan Fraser Block, Joyanna L. Zacher, Jacob Jeremiah Ferguson, Jennifer Lynn Kolar, William C. Rodgers and other persons, willfully and knowingly conspired and agreed to maliciously damage or destroy, or attempt to damage or destroy, by means of fire, buildings, vehicles and other personal and real property owned in whole or in part or possessed by, or leased to, the United States or any department or agency thereof, and or used in interstate commerce or in any activity affecting interstate commerce; and to knowingly and willfully damage and attempt to damage the property of an energy facility of the United States involved in the transmission of electricity.

The conspiracy was accomplished by the defendant and the others named above, when certain of the defendants and others joined together in a group they called the "Family." This "Family" was what is commonly known as a "cell" of groups and movements publicly named and described by certain of the defendants and others as the Earth Liberation Front (ELF), the Animal Liberation Front (ALF), and other names.

The primary purposes of the conspiracy were to influence and affect the conduct of government, commerce, private business and others in the civilian population by means of force, violence, sabotage, destruction of property, intimidation and coercion, and by similar means to retaliate against the conduct of government, commerce and private business. To achieve these purposes, some of the conspirators committed and attempted to commit acts potentially dangerous to human life and property that constituted violations of the criminal laws of the United States and of individual states.

Some of the defendants and others targeted for arson, buildings, vehicles and other real and personal property owned, possessed, and leased by the United States and its departments and agencies while others targeted for arson, buildings, vehicles and other real and personal property used in interstate commerce and in activities affecting interstate commerce; and still others targeted energy facilities of the United States for damage and destruction.

The defendant and others conducted and participated in meetings to plan arsons of the targeted sites. Several of these meetings were called "Book Club" meetings by the defendants and others and occurred at distant locations. The "Book Club" meetings covered subjects such as lock-picking, computer security, reconnaissance of targets,

and manufacture of timing devices to set off improvised incendiary devices.

Some of the defendants and others conducted research and surveillance of sites targeted for arson and discussed their actions among themselves by using code words, code names, and nicknames. The phrase "direct action" was used to include arsons and other acts of destruction.

In preparation for the actions, the conspirators designed and constructed destructive devices which functioned as incendiary devices to ignite fires and destroy the targets for arson and provided transportation to the locations of the arson targets.

During the course of the "direct actions" the defendant and others dressed in dark clothing, wore masks and gloves and otherwise disguised their appearance. Some of the conspirators acted as "lookouts" to ensure secrecy as the crimes were carried out, and some placed destructive devices and accelerants at sites targeted for arson and ignited or attempted to ignite the devices and accelerants.

In some of the arsons and attempted arsons, certain of the defendants and others painted messages on the walls of the targets, including "Earth Liberation Front," "ELF" and related names and statements concerning the purposes of the crimes.

After the arsons and attempted arsons, the defendants and others destroyed, buried, hid and otherwise disposed of physical evidence used in the commission of the crimes and thereafter publicized and promoted the results of the fires by means of written press releases and communiques which attributed the arsons to the Earth Liberation Front (ELF), the Animal Liberation Front (ALF) and related groups, and stated the purpose of the arsons.

Before, during and after the arsons, attempted arsons, and destruction of an energy facility, some of the defendants and others agreed among themselves never to reveal to law enforcement authorities or to anyone else outside "the Family" the identity of the conspirators and participants in the arsons and attempted arsons and agreed among themselves to conceal or destroy any evidence connecting them to the arsons and attempted arsons. Some of the defendants and others possessed and/or used false identification documents in order to conceal their true identities and after the arsons and attempted arsons, some of the defendants and others fled and secreted themselves in foreign countries in order to avoid detection and arrest by law enforcement authorities in the United States.

## Count 2: Arson – Oakridge Ranger Station

On October 30, 1996, Kevin Tubbs, Jacob Ferguson and Josephine Sunshine Overaker traveled to a staging area near the United States Department of Agriculture, Forest Service, Oakridge Ranger Station, located near Oakridge, in the District of Oregon. Tubbs drove the vehicle with Ferguson and Overaker as passengers. At the staging area, Tubbs dropped off Ferguson and Overaker and waited with the parked

vehicle. While Tubbs waited for Ferguson and Overaker to complete the arson of the ranger station, Ferguson and Overaker placed incendiary devices around the ranger station building. Once completed with the placement of the devices, Ferguson and Overaker rejoined Tubbs at the vehicle and Tubbs drove them back to Eugene, Oregon taking a circuitous route to avoid law enforcement detection. The incendiary devices functioned and caused the ranger station to be destroyed by fire. The building and other real and personal property were owned and possessed by the United States and the United States Forest Service of the Department of Agriculture.

## Count 3: Arson – Cavel West

Prior to July 21, 1997, Kevin Tubbs had read an article regarding the Cavel West Meat Packing Plant at 1607 SE Railroad, Redmond, in the District of Oregon, slaughtering wild horses. Tubbs performed research of that plant. Tubbs traveled to Redmond, Oregon in his van which was registered in his false name of Ronald Calloway. Once locating the meat packing facility, Tubbs performed a reconnaissance of the facility to determine what kind of damage he could cause at the facility. After Tubbs returned to Eugene, Oregon, he contacted Joseph Dibee and discussed the possibility of damaging the facility. Tubbs then contacted Jacob Ferguson and requested Ferguson's assistance in damaging the meat packing plant. Sometime later, but prior to July 21, 1997, Tubbs, Ferguson and Dibee traveled to Redmond, Oregon and performed a reconnaissance of the Cavel West Plant. After the reconnaissance and their return to Eugene, Oregon, the three determined that it would take more than three people to commit the arson at that location. Dibee told Tubbs that Dibee would recruit Jonathan Paul to assist in the arson at Cavel West. Prior to July 21, 1997, Tubbs, Dibee and Ferguson met with Paul and Jennifer Kolar. Tubbs, Dibee and Ferguson were upset with Paul for bringing Kolar prior to Kolar having been approved for the direct action. Once it was decided to go ahead with the arson with Kolar, they all traveled to a staging area near Redmond, Oregon. Once at the staging area they realized that their two-way radios had no batteries. They decided to scrub the mission for that night and to return to Eugene, Oregon. The following day, radio batteries were purchased and Tubbs, Dibee, Ferguson, Paul and Kolar traveled back to the staging area near Redmond, Oregon in Tubbs' van and in Paul's vehicle. Again, at the staging area, all the conspirators put on dark clothing, performed a radio check and dug a hole in which to place their dark clothing after the arson. All five then drove towards the Cavel West plant in Tubbs' van. They arrived in Redmond, Oregon on July 21, 1997 and parked in a parking lot near the Cavel West plant. Tubbs remained with the van and served as a lookout while the others went over to the plant and placed the incendiary devices. Tubbs also monitored police radio traffic on a police scanner. After the incendiary devices had been placed and the others had returned to the van, Tubbs drove everyone back to the staging area. They all took off their dark clothing and placed it in the prepared hole. Muriatic acid was poured over the clothing and then covered with soil. Tubbs, Dibee and Ferguson left Paul and Kolar and returned to Eugene, Oregon. The incendiary devices functioned and destroyed the meat packing plant building by fire. Tubbs wrote the majority of the communique which claimed responsibility for the fire and mailed the communique to the *Oregonian* newspaper.

The Cavel West Meat Packing buildings and other real and personal property were used in interstate commerce and in activities affecting interstate commerce.

## Count 4: Arson – BLM Wild Horse Facility, Burns, Oregon

Prior to November 30, 1997, Kevin Tubbs, Jacob Ferguson and William Rodgers traveled to the United States Bureau of Land Management Wild Horse and Burro Facility, Burns, Harney County, in the District of Oregon to perform a reconnaissance of that facility. Tubbs, Ferguson and Rodgers discussed plans for releasing the horses from the corrals and setting fire to the facilities. Immediately prior to November 30, 1997, Tubbs drove with Ferguson, Rodgers, Josephine Sunshine Overaker and Rebecca Rubin to a gate at the front of the facility. Ferguson, Rodgers, Overaker and Rubin were dropped off at that location while Tubbs remained with the vehicle and served as a lookout. Tubbs and the others had two-way radios with which to maintain contact. Tubbs also had a police scanner to monitor police dispatcher radio traffic so that he and the others could avoid being detected by law enforcement. The others were to release the horses from the corrals and to place the incendiary devices at the facility. Tubbs received word over his two-way radio that Ferguson, Rodgers, Overaker, and Rubin had completed releasing the horses and setting the incendiary devices. Tubbs returned to the front gate, picked up the others and traveled back to Eugene, Oregon. The incendiary devices functioned and destroyed the facility. The buildings and other real and personal property were used in interstate commerce and in activities affecting interstate commerce and were owned and possessed by the United States and the Bureau of Land Management of the Department of the Interior.

## Count 5: Attempted Arson – U.S. Forest Industries

Several weeks prior to December 22, 1998, Kevin Tubbs, Jacob Ferguson, Kendall Tankersley and another performed a reconnaissance and a dry run of the U.S. Forest Industries facilities at 2611 Whittle Avenue, Medford, Jackson County, in the District of Oregon, in preparation for an arson at that location. On December 22, 1998, Tubbs drove Ferguson and Tankersley to U.S. Forest Industries and dropped off Ferguson and Tankersley. Tubbs remained at the van and served as a lookout. Ferguson and Tankersley placed time delayed incendiary devices about the facility and rejoined Tubbs. Tubbs then drove them all back to Eugene, Oregon. The devices failed to function. Tubbs did not hear that the arson had been successful and traveled to Nebraska for the Christmas holiday. The buildings and other real and personal property were used in interstate commerce and in activities affecting interstate commerce.

## Count 6: Arson – Childers Meat Company

Prior to May 9, 1999, Tubbs performed research of the Childers Meat Company, located at 29476 Airport Road, Eugene, Lane County, in the District of Oregon. Tubbs selected that facility as an arson target and performed a reconnaissance at that location with Jacob Ferguson. The night of the arson, May 9, 1999, after meeting at a staging

area and leaving other vehicles at that location, Tubbs drove Jacob Ferguson, Stanislas Meyerhoff, Chelsea Gerlach and others to Childers Meat Company facility. Tubbs parked the van and served as a lookout for the others. Tubbs had a two-way radio and monitored a police scanner to avoid detection by law enforcement. Once the devices had been placed around the facility by Ferguson and others, Tubbs picked up the others and drove them back to where they had left their other vehicles. The incendiary devices functioned and destroyed the Childers Meat Company facilities. The buildings and other real and personal property were used in interstate commerce and in activities affecting interstate commerce.

## Count 7: Arson – EPD Public Safety Station

Prior to September 9, 2000, Tubbs was asked by Stanislas Meyerhoff and Chelsea Gerlach to be a lookout for them for an arson that was being planned at the Eugene Police West University Public Safety Station located at 791 East 13th Avenue, Eugene, Lane County, in the District of Oregon. Tubbs agreed to be their lookout and on the night of the arson, September 9, 2000, Tubbs met with Gerlach and Meyerhoff near the University of Oregon. Tubbs was told by Gerlach and Meyerhoff to ride his bicycle to a 7-11 store near the Police station and watch out for them. Tubbs arrived at the 7-11 store with his two-way radio to communicate with Gerlach and Meyerhoff. Tubbs observed Meyerhoff place a bicycle next to the Substation. On the bicycle was attached a backpack which contained an incendiary device. Tubbs also saw Gerlach place a backpack which contained an incendiary, next to the building. After the incendiary devices were placed, Tubbs went back to his home. One of the devices functioned and caused damage to the building by fire. One of the devices failed to function. The Eugene Police Department West University Public Safety Station building and other real and personal property were used in interstate commerce and in activities affecting interstate commerce.

## Count 8: Arson – Superior Lumber Company

Prior to January 2, 2001, Kevin Tubbs and Jacob Ferguson chose Superior Lumber Company located at 2695 Glendale Valley Road, Glendale, Douglas County, in the District of Oregon, as a target for an arson. On the night of the arson, January 2, 2001, Tubbs drove Ferguson, Stanislas Meyerhoff, Daniel McGowan and Suzanne Savoie to Glendale, Oregon. Tubbs dropped Savoie off at a phone booth near the Superior Lumber Company facility. Savoie was to serve as a lookout on the south side of the target. Tubbs then dropped off McGowan on the north side of the facility where he served as a lookout. Ferguson and Meyerhoff were dropped off with the incendiary devices at the facility. Tubbs drove a short distance away from the facility and waited for pick up instructions. Tubbs and the others had two-way radios and Tubbs had a police scanner to monitor law enforcement communications. Tubbs was notified by radio that the devices had been placed at the facility. Tubbs then went to pick up Savoie, Ferguson and Meyerhoff. On their way north from the facility, they picked up McGowan from his designated location, and traveled back to Eugene, Oregon. The devices functioned and the Superior Lumber Company facility was destroyed by fire.

The Superior Lumber Company building and other real and personal property were used in interstate commerce and in activities affecting interstate commerce.

## Counts 9 through 43: Arson – Romania Chevrolet Truck Center Vehicles

Prior to March 30, 2001, Kevin Tubbs was asked by Stanislas Meyerhoff to be a lookout at an arson at the Romania Truck Center located at 1425 Walnut Street, Eugene, Lane County, in the State and District of Oregon. Tubbs agreed to be a lookout and on the night of the arson, March 30, 1999, Tubbs traveled to the area of the University of Oregon and walked up to a parked van. Tubbs got into the van and met Meyerhoff and William Rodgers in the rear of the van. Tubbs was given a two-way radio with which he could communicate with the other arson conspirators. Tubbs was then dropped off at a 76 gas station near the Romania Chevrolet Truck Center facility. Tubbs hid behind some bushes and performed the duties of a lookout. After the incendiary devices were placed around the vehicles at that facility, Tubbs was picked up and once inside the van, observed co-conspirator Nathan Block. Tubbs was then taken to the area of the Sundance Food Market in Eugene, Oregon and dropped off. The incendiary devices functioned and the Romania Chevrolet Truck Center vehicles were destroyed by fire. These vehicles and other real and personal property were used in interstate commerce and in activities affecting interstate commerce.

## Counts 44 through 56: Arson – Attempted Arson – Jefferson Poplar Farm

Prior to May 21, 2001, Kevin Tubbs, Jacob Ferguson, Stanislas Meyerhoff and Chelsea Gerlach performed a reconnaissance to prepare to commit an arson at the Jefferson Poplar Farm located at 79114 Collins Road, Clatskanie, Columbia County, in the District of Oregon. On May 21, 2001, Tubbs' co-conspirators placed incendiary devices at that location and destroyed the facility by fire. The Jefferson Poplar Farm buildings and other real and personal property were used in interstate commerce and in activities affecting interstate commerce.

## Western District of Washington Case No. CR05-5828FDB

Prior to June 21, 1998, Kevin Tubbs and Jacob Ferguson performed reconnaissance in preparation to commit arson at the National Wildlife Research Facility, at 9701 Blomberg Street SW, Olympia, Washington, which was then leased to the United States of America. The day of the arson, June 21, 1998, Tubbs, Ferguson and Josephine Sunshine Overaker drove to a hardware store in Tacoma, Washington to obtain items for the arson at the wildlife research facility. While Tubbs was waiting in the van near the hardware store, Overaker was arrested in that store for shoplifting. Tubbs and other co-conspirators believed that Overaker would be too much of a risk to continue to involve her in the arson conspiracy. Tubbs and Ferguson met up with Rodgers and drove to the research facility. Rodgers and Ferguson placed the incendiary devices at that location and hand lit the devices. Tubbs drove Ferguson and Rodgers away from the facility. The devices destroyed the facility by fire. The building

and other real and personal property used in interstate commerce and in activities affecting interstate commerce and were possessed by the United States.